UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION

| | | |
|---|---|---|
| FINANCE AND INVESTMENT COMPANY (BERMUDA) LTD., et al., | ) ) ) | |
| Plaintiffs | ) | |
| vs. | ) ) | CAUSE NO. 3: 93-CV-251RM |
| GEBERIT AG, et al., | ) ) | |
| Defendants | ) ) | |

*********************************
| | | |
|---|---|---|
| FINANCE AND INVESTMENT COMPANY (BERMUDA) LTD., et al., | ) ) ) | |
| Plaintiffs | ) | |
| vs. | ) ) | CAUSE NO. 3: 94-CV-137RM |
| FAENZA EDITRICE IBERICA S.L., | ) ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER

This cause is before the court on the plaintiffs' motion for issuance of letters rogatory, motion for extension of the deadlines for discovery and amendments to the pleadings, and the Geberit defendants' motion to dismiss and/or for summary judgment and motion for extension of deadlines for discovery and amendment of the pleadings. For the reasons that follow, the court grants the motion to dismiss and/or for summary judgment because the plaintiffs lack standing to bring the claims asserted in this action and therefore, denies as moot the plaintiffs' motion for issuance of letters rogatory as well as the two motions for

extension of the deadlines for discovery and amendments to the pleadings.

I.

This is an action for trademark infringement and unfair competition arising out of the defendants' alleged infringement of the federal registered trademark "Clos O Mat." The plaintiffs bring claims of trademark and trade name infringement under the Lanham Act, as well as an unfair competition claim.

In May 1977, the plaintiff Finance and Investment Company (Bermuda) Limited ("FIC") and Hans Maurer, Clos O Mat AG ("Hans Maurer") entered into a License Agreement and Royalty Agreement ("License Agreement") regarding the federally registered trademark "CLOS O MAT," registered under United States Trademark Registration No. 1,094,350. Neither Closomat (U.S.A.), Inc. ("Closomat US") nor Joseph Muller Corporation Zurich ("JMCZ") is a party to the License Agreement. Pursuant to the License Agreement, Hans Maurer retained all rights to the trademark and FIC acknowledged that Hans Maurer "owns all rights to the trademark 'CLOS O MAT.'"

The License Agreement expressly provided that FIC is not the agent or legal representative of Hans Maurer for any purpose and has no right or authority to bind Hans Maurer in any manner. (License Agreement, ¶ 10.3).

The License Agreement provides in pertinent part:

> [T]he Licensor owns the exclusive rights for the manufacture, assembly, use, sale and distribution of the Patented Appliances in the United States of America . . . .

2

Licensor grants to Licensee the exclusive right and license to manufacture, assemble, use, sell and distribute the Patented Appliances in the Territories [the United States and various other countries] under the Trademark owned by the Licensor or such other trademark or trademarks as Licensee shall choose.

The Licensee may, by appropriate agreements, delegate manufacturing, assembly, use, sale or distribution rights and licenses for certain sub-territories within the Territories to qualified persons; <u>provided however</u>, that the Licensee shall remain responsible to the Licensor to insure that all provisions of this Agreement are respected also by the sublicensees, including, but not limited to, those provisions concerning . . . the use of the Trademark.

When information is brought to the Licensee's attention indicating that others without license are unlawfully infringing on the rights granted by this Agreement, the Licensee shall advise the Licensor, who shall prosecute diligently any infringer . . . . If the Licensor finds it necessary or desirable in any suit which the Licensor may institute, the Licensor may join the Licensee as parties-plaintiff. . . . .
In the event the Licensor shall fail to prosecute any infringement suits upon the request of the Licensee, such suits may be instituted by the Licensee . . . .

The Licensee shall manufacture and assemble the Patented Appliances and use the Trademark only in accordance with the terms of this Agreement, and shall insure . . . that the same is done by its sublicensors.

The Licensee shall notify the Licensor <u>in writing</u> of . . . any acts of infringement or acts of unfair competition involving the . . . Trademark <u>promptly</u> after such matters come to the Licensee's attention.  (emphasis added)

The Licensee shall not use the Trademark as a trade name in combination with any other trademark, word, symbol, letter or design except on letterhead of the Licensee or a subsidiary corporation controlled by the Licensee.

License Agreement, ¶¶ 1.2, 3.1, 4.5, 5.3, 5.8, 5.9.  The License Agreement constitutes the entire agreement between FIC and Hans Maurer.  License Agreement ¶ 10.6.

FIC did not provide Hans Maurer with any notice of alleged acts of infringement or unfair competition relating to the trademark prior to commencing this action.

Hans Maurer has not authorized the plaintiffs to bring this action. On March 23, 1995, Josef Muller met with Peter Maurer and presented Mr. Maurer with a copy of a statement that Mr. Muller explained would give Mr. Muller authority to pursue litigation against the Geberit defendants and attempted to convince Mr. Maurer to sign the statement. Mr. Maurer refused to sign the statement. Mr. Muller and Mr. Maurer did not discuss the License Agreement in detail, but to the best of his recollection, Mr. Maurer recalls a reference to ¶ 4.5 of the License Agreement contained in the statement presented by Mr. Muller. Mr. Muller did not describe the claims asserted against the Geberit defendants and did not provide any information relating to the claims.

According to Mr. Maurer, he never told "Mr. Muller[1] that Closomat AG, Hans Maurer AG, or any other related or predecessor company, consented to and/or authorized Josef Muller or anyone else affiliated with Josef Muller, including FIC, to bring a lawsuit against the Geberit[s]." Mr. Maurer states that "[n]o one at Closomat AG, Hans Maurer AG, or any other related or predecessor company has ever stated to Josef Muller or anyone else, including anyone else at FIC, that they should aggressively pursue potential infringers at their own initiative and to the extent that they

---

[1] Josef Muller was president of all three plaintiffs prior to 1995.

4

decide necessary." Mr. Maurer denies that he gave Mr. Muller any instructions whatsoever, particularly with respect to prosecution of this action against the Geberits.

FIC does not own either Closomat US, JMCZ, or any other company. FIC has never acquired any interest in Closomat US, and Closomat US is not a subsidiary controlled by FIC.[2]

FIC is a licensee of Hans Maurer. Assuming that JMCZ and Closomat US are distributors of FIC,[3] they are non-exclusive distributors. Neither JMCZ nor Closomat US have any rights under the License Agreement. Neither Closomat US nor JMCZ is a licensee of Hans Maurer, and neither is a sublicensee of FIC under the License Agreement.[4] No sublicense agreements exist between FIC and either Closomat US or JMCZ.

On December 14, 1994, the court ordered the plaintiffs to produce "any and all license agreements and related documents they may have or have had with Hans Maurer or any company related to or controlled by Mr. Maurer relating to the trademark at issue on which the plaintiffs rely to establish their right to bring this

---

[2] Thus, it appears that Closomat US's use of the trade name Closomat violates the terms of the License Agreement.

[3] It appears that plaintiffs' counsel, Andrew Goodman, rather than Josef Muller, stated that FIC has distributorship agreements. Moreover, in response to defendants' first interrogatories, the plaintiffs identified only the License Agreement as any agreement the plaintiffs have dealing with products using the name Closomat or dealing with the use of the name Closomat. See Interrogatory No. 4.

[4] Pursuant to the court's order, the plaintiffs failure to provide the defendants with any such sublicense agreements bars the use of any such agreements, assuming that they exist, in response to the defendants' motion.

action."   The court further ordered that "any document not so produced may not be used in response to any summary judgment motion based on standing . . . . "   The only license agreement or document the plaintiffs produced was the License Agreement.

Faenza Editrice Iberica S.L. ("Faenza") is a Spanish corporation and the publisher of <u>Salo</u> <u>Bano</u>, a trade magazine for the bathroom fixture industry.   The complaint alleges that the Geberit defendants were involved with Faenza's alleged publication of a 1989 article in <u>Salo</u> <u>Bano</u> referring to a toilet as a "Geberit, Series 'Closomat'" and with the alleged distribution of the <u>Salo</u> <u>Bano</u> issue containing the article in Florida in 1991.   The publication of the "Geberit, Series 'Closomat'" was a publisher's mistake.

## II.

The Geberits seek dismissal and/or summary judgment, contending that the plaintiffs' license agreement precludes them from asserting their claims in this action, that the plaintiffs lack standing to bring their claims, that the complaint fails to state claims upon which relief may be granted, that no admissible facts support the plaintiffs' claims that the Geberits are liable,

and that the plaintiffs' misconduct warrants dismissal of this cause.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party cannot merely rest on the pleadings, but must come forward with admissible evidence to show that there is a genuine issue of material fact. Hickey v. A.E. Staley Mfg., 995 F.2d 1385, 1388 (7th Cir. 1993).

The Geberit defendants claim that none of the plaintiffs has standing to assert claims based on the federally registered Closomat mark. The court agrees. The party invoking the court's jurisdiction must have standing to sue, Valley Forge College v. Americans United for Separation of Church and State, 454 U.S. 464, 471-72 (1981), as "standing imports justiciability . . . ." Warth v. Seldin, 422 U.S. 490, 498 (1975). The party invoking the court's jurisdiction bears the burden of proving its standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 2136 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 216 (1989). Standing is required at the commencement of the action and must continue throughout the entirety of the action. See Jones v. Sullivan, 938 F.2d 801, 805 (7th Cir. 1991).

A. § 32(1) of the Lanham Act

Plaintiffs' first and fourth claims are based on § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), which provides, "Any person who shall, without the consent of the registrant . . . [infringe a registered trademark] shall be liable in a civil action by the registrant . . . ." Section 32(1) applies to registered marks. Two Pesos, Inc. v. Taco Cabana, Inc., 112 S. Ct. 2753, 2757 (1992); see also Inwood Lab., Inc. v. Ives Lab., Inc., 456 U.S. 844, 858 (1982) (§ 43(a) "prohibits a broader range of practices than does § 32"). The plaintiffs apparently concede that neither JMCZ nor Closomat US has standing under § 32(1) of the Lanham Act. See Plaintiffs' Brief at 21-24 (contending that the First Claim "should survive at least as to Plaintiff FIC."), but contend that FIC has standing. The plaintiffs rely on Wynn Oil v. Thomas, 839 F.2d 1183 (6th Cir. 1988), for the proposition that a licensee may properly bring a § 32(1) claim, but Wynn Oil is factually distinguishable. Both the registrant and the exclusive licensee brought claims in Wynn Oil. 839 F.2d at 1185. Moreover, Wynn Oil is not controlling authority, and the court agrees with the critics, see, e.g., 4 J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition, § 32.02[7][a] (3rd ed. 1994) ("Without any citation of authority or any discussion, the Sixth Circuit . . . held that an exclusive licensee of a registered mark had standing to sue for infringement of the registered mark."), that Wynn Oil was erroneously decided.

The plaintiffs rely on Turner v. H.M.H. Publishing Co., 380 F.2d 224 (5th Cir.), cert. denied, 389 U.S. 10006 (1967),

Sterling Drug, Inc. v. Lincoln Labs., Inc., 322 F.2d 968 (7th Cir. 1963), and Alligator Co. v. Robert Bruce, Inc., 176 F. Supp. 377 (E.D. Pa. 1959), for the proposition that FIC as licensee may properly bring a trademark infringement claim under § 32(1) of the Lanham Act as a "related party" to the trademark owner, Hans Maurer. These cases are factually distinguishable. In Turner, the trademark owner and master licensee had a common owner. 380 F.2d at 225-26. FIC and Hans Maurer have no common owner. The Sterling Drug plaintiffs included the trademark owner, its wholly-owned subsidiary, and the subsidiary's successor-in-interest. 322 F.2d at 969. Both the trademark owner and exclusive licensee brought suit in Alligator Co.. 176 F. Supp. at 378. Sterling Drug and Alligator Co. are distinguishable because Hans Maurer, the owner of the Closomat mark, is not a party to this action. Additionally, FIC is not a subsidiary of Hans Maurer, and neither Closomat US nor JMCZ is a subsidiary of FIC. To the extent that the non-binding authority relied upon by the plaintiffs supports their position that FIC has standing under § 32(1) of the Lanham Act, the court finds the cases unpersuasive.

The better view is that only registrants have standing to sue under § 32(1) of the Lanham Act. As a respected commentator explains:

> If plaintiff is the owner of a federal mark registration, it may sue in federal court for infringement of that registered mark. Since the statute states that infringement consists of use in interstate commerce "without the consent of the *registrant*," and that the infringer "shall be liable in a civil action by the *registrant*," it is clear that plaintiff must allege that it is in fact the "registrant" of an already issued and outstanding

9

registration. Only the federal "registrant" has standing
to sue under Lanham Act § 32(1).

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competi-
tion, 32.02[1][a] (3rd ed. 1994) (footnotes omitted) (emphasis in
original); see also Berni v. International Gourmet Restaurants of
America, 838 F.2d 642, 645-46 (2d Cir. 1988) (holding non-regis-
trant plaintiffs lacked standing to bring claim for trademark
infringement under § 32(1)).

All plaintiffs lack standing to bring their trademark
infringement claims under § 32(1) of the Lanham Act. Accordingly,
the court finds that the plaintiffs' first and fourth claims should
be dismissed for lack of standing.

## B.   § 43(a) of the Lanham Act

Plaintiffs' second, third and fifth claims are based on
§ 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[5] which provides a
basis for claims of infringement of unregistered trademarks, trade
names, and trade dress. See, e.g., Two Pesos v. Taco Cabana, Inc.,
112 S. Ct. 2753 (1992) ("the Court interprets [§ 43(a)] as having
created a federal cause of action for infringement of unregistered
trademarks or trade dress . . . ."); International Order of Job's
Daughters v. Lindeberg and Co., 633 F.2d 912, 917 (9th Cir. 1980),

---

[5] Section 43(a) provides that "Any person who, on or in
connection with any goods or services . . . uses in commerce any
word, term, name, symbol, or device, or any combination thereof. .
. which is likely to cause confusion . . . shall be liable in a
civil action by any person who believes that he or she is or is
likely to be damaged by such act."   15 U.S.C. § 1125(a)(1)(A).
Section 1125(a)(1)(B) addresses acts in commercial advertising or
promotion, and is not applicable here.

cert. denied, 452 U.S. 941 (1981) ("section 43 of the Lanham Act . . . created a federal remedy against that deceptive use of unregistered trademarks . . . ."); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 27.03[b] (3rd ed. 1994) (citing cases); 4 McCarthy on Trademarks and Unfair Competition, § 32.02[4][a] (3rd ed. 1994). Section 43(a) does not require ownership of a federal trademark registration. 15 U.S.C. § 1125(a).

Each plaintiff asserts standing to claim infringement and unfair competition under § 43(a) of the Lanham Act. The court disagrees. An exclusive licensee of a mark may have standing to sue under § 43(a), see 4 McCarthy on Trademarks and Unfair Competition, § 32.02[4][b] (3rd ed. 1994), and cases cited therein, but the court is aware of only one court that has held that a non-exclusive licensee has standing to sue under § 43(a).[6] See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 160 (1st Cir. 1977). Neither Closomat US nor JMCZ is an exclusive licensee of the Closomat mark; thus, they have no colorable claim of standing. Only FIC has an exclusive license relating to the Closomat mark.

The cases relied upon by plaintiffs are factually distinguishable. In each, the trademark owner was a party to the action, or the plaintiff was an exclusive licensee or exclusive franchisee or exclusive distributor, or the owner of the mark owned the

---

[6] The opinion in D.M. & Antique Import Corp. v. Royal Saxe Corp., 311 F. Supp. 1261, 1268 (S.D.N.Y. 1969) (U.S. distributor for foreign corporation had standing to assert Lanham Act claim against competitor), does not explicitly indicate whether the plaintiff was an exclusive distributor or not.

plaintiff in whole or in part. See, e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc., 670 F.2d 642, 644, 646 (6th Cir.), cert. denied, 459 U.S. 916 (1982) (exclusive licensee in territory); Norman M. Morris Corp. v. Weinstein, 466 F.2d 137 (5th Cir. 1972) (exclusive distributor has standing for false representation claim); Sterling Drug, Inc. v. Lincoln Labs., Inc., 322 F.2d 968, 969 (7th Cir. 1963) (plaintiffs were the trademark owner, its wholly-owned subsidiary, and the subsidiary's successor-in-interest); G. H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499 (2nd Cir.), cert. denied, 323 U.S. 715 (1944) (exclusive distributor owned by trademark owner had standing to sue for trademark infringement); Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 753 F. Supp. 1240, 1242, 1245 (D.N.J. 1991), aff'd, 935 F.2d 1281 (1991) (exclusive distributor had standing to sue under § 32(1) and 43(a) where owner of the mark and exclusive distributor were wholly-owned subsidiaries of the same company); Business Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452, 1457 (S.D.N.Y. 1987) (exclusive licensee has standing to sue under § 43(a) and for unfair competition and false designation of origin).

This action, in contrast, is brought by FIC with non-exclusive distributors in violation of the express terms of the applicable license agreement. Moreover, this action involves a license agreement that, with few exceptions not presented here, precludes actions by the licensee for infringement and unfair competition claims relating to the mark.

This action is most similar to DEP Corp. v. Interstate Cigar Co., 622 F.2d 621 (2d Cir. 1980), in which the plaintiff faced both statutory and contractual limitations on standing to sue under the Lanham Act. The plaintiff entered into an exclusive distributorship agreement with the trademark owner's major distributor. 622 F.2d at 621. The agreement provided that the plaintiff had no claim or right in the trademark, that the plaintiff was to promptly notify the major distributor of infringement, and that the major distributor would determine what action to take to protect its rights. The plaintiff had no licensing agreement or any contract with the trademark owner, and the owner of the mark was not a party to the action. DEP Corp., 622 F.2d at 622. The court relied on the provision in the distributorship agreement that explicitly provided the plaintiff had no claim or right in the trademark in holding that the plaintiff lacked standing to bring a trademark infringement claim because the plaintiff was not the owner of the trademark and had no property interest in the trademark. DEP Corp., 622 F.2d at 623-24.

As in DEP Corp., the plaintiffs face both statutory and contractual limitations on their standing to bring this action for trademark infringement and unfair competition. As in DEP Corp., the license agreement in this cause did not give FIC (let alone Closomat US and JMCZ) any ownership rights in the trademark; Hans Maurer retained all ownership rights to the trademark under the License Agreement. Pursuant to the License Agreement, the only license agreement that exists relating to the trademark at issue,

13

FIC could not bring this action unless it gave prompt, written
notice to Hans Maurer, ("The Licensee shall notify the Licensor <u>in</u>
<u>writing</u> of . . . any acts of infringement or acts of unfair
competition involving the . . . Trademark <u>promptly</u> after such
matters come to the Licensee's attention.") (emphasis added), and
Hans Maurer refused to act ("In the event the Licensor shall fail
to prosecute any infringement suits upon the request of the
Licensee, such suits may be instituted by the Licensee . . . .").
FIC did not give prompt written notice to Hans Maurer; indeed, FIC
gave no notice until March 23, 1995, more than two years after this
action was commenced.

        The License Agreement did not grant FIC the right to
grant others authority to bring an action for trademark infringe-
ment; FIC could only "delegate manufacturing, assembly, use, sale
or distribution rights and licenses for certain sub-territories."
FIC was obligated to insure that all sublicensees respected the
provisions of the License Agreement, including the terms relating
to the trademark ("The Licensee shall . . . use the Trademark only
in accordance with the terms of this Agreement, and shall insure .
. . that the same is done by its sublicensors.").  Yet FIC brought
this action with Closomat US and JMCZ who have no agreements with
Hans Maurer whatsoever and have no rights under the License
Agreement.  The License Agreement does not authorize either sub-
licensees or distributors to bring a trademark infringement action.
Under the terms of the License Agreement, neither FIC, Closomat US,
nor JMCZ, has any right to bring this action.

The plaintiffs' claim that "the trademark owner has acknowledged and consents to the maintenance and continued prosecution of the litigation by Plaintiffs consistent with terms of the License and Royalty Agreement," Plaintiffs' Brief at 25; see also id. at 26 ("Maurer, the trademark owner does not object (and in fact has ratified the action pursuant to the terms of the License and Royalty Agreement as set forth in the Muller affidavit"), is belied by Peter Maurer's affidavit.   Peter Maurer expressly states that he never told Mr. Muller "that Closomat AG, Hans Maurer AG, or any other related or predecessor company, consented to and/or authorized Josef Muller or anyone else affiliated with Josef Muller, including FIC" to bring this action against the Geberits.   Moreover, Mr. Maurer states that "[n]o one at Closomat AG, Hans Maurer AG . . . ever stated to Josef Muller or anyone else, including anyone else at FIC, that they should aggressively pursue potential infringers at their own initiative and to the extent that they decide necessary," and Mr. Maurer denies that he gave Mr. Muller an instructions regarding the prosecution of this action.

Josef Muller's affidavit, containing inadmissible hearsay, is insufficient to create a genuine issue of material fact as to whether the plaintiffs have authorization to bring this action.[7]   Similarly, the seven "sample correspondence" attached to

---

[7] In his affidavit, Josef Muller states that the owner and licensor of the trademark, Hans Maurer, authorized the plaintiffs to maintain this action.   ¶ 2.   Mr. Muller states that Mr. Maurer told him that "the Maurer Company consented to and authorizes the
(continued...)

Mr. Muller's affidavit, would be inadmissible hearsay and there-
fore, insufficient to prove support Mr. Muller's claims.  Evidence,
including affidavits, submitted for summary judgment purposes must
be admissible at trial.   Fed. R. Civ. P. 56(e); <u>Lac Du Flambeau
Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis.,
Inc.</u>, 991 F.2d 1249, 1259 (7th Cir. 1993).

FIC is the only plaintiff with a license agreement
regarding the Closomat mark.  None of the plaintiffs have authority
from the trademark owner, Hans Maurer, to bring this action.  The
License Agreement expressly requires FIC to give Hans Maurer prompt
written notice of any acts of infringement or unfair competition
relating to the trademark.   Mr. Muller's deposition testimony
reveals that FIC never gave Mr. Maurer such notice.   Under the
License Agreement's terms, FIC can bring suit only if Hans Maurer
refuses to do so.  Mr. Muller's deposition testimony reveals that
neither Closomat US nor JMCZ has a license or sublicense for the
sale of products under the mark or the use of the mark, as required
by the License Agreement, and the plaintiffs have not produced any
such license or sublicense.

Moreover, the License Agreement precludes Closomat US's
use of the mark as a trade name, because, in addition to FIC, only

---

[7](...continued)
prosecution of . . . [this action] by FIC" and that Mr. Maurer
instructed FIC to "take all steps it deems necessary and desirable
for the conduct or disposition of" this action.   ¶ 3.   Mr. Muller
further states that the Maurer Company instructed FIC over the
years to "aggressively pursue potential infringers to the extent
Plaintiffs deem necessary . . . ."  ¶ 4.  Mr. Muller states that he
met with Peter Maurer on March 23, 1995 and claims that they
discussed this action in "great detail."   ¶ 3.

subsidiaries controlled by FIC may use the mark as a trade name. FIC has no ownership interest in Closomat US, yet Closomat US uses the mark as a trade name. Pursuant to the terms of the License Agreement, neither Closomat US nor JMCZ may properly bring claims for trade name infringement.

Furthermore, § 43(a) provides a cause of action for infringement of an unregistered trademark, trade name, or trade dress. <u>See</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 112 S. Ct. 2753, 2761 (1992) ("[T]he Court interprets [§ 43(a)] as having created a federal cause of action for infringement of unregistered trademarks or trade dress . . . ."); <u>but</u> <u>see</u> <u>Birthright v. Birthright Inc.</u>, 827 F. Supp. 1114, 1136 (D.N.J. 1993); <u>Unital Ltd. v. Sleepco Mfg. Ltd.</u>, 627 F. Supp. 285, 288 (W.D. Wash. 1985). As McCarthy explains:

> The new statute [§ 43(a)] is divided into two subsections: part one relates to the use of the statute as a vehicle for federal court assertion of unregistered trademark, trade name and trade dress infringement claims, and part two relates to use of the statute as a vehicle for federal court assertion of false advertising (as well as trade libel) claims. . . .
>
> The new statute codifies that nearly unanimous rule of the cases that all of the Lanham Act remedies for infringement of <u>registered</u> marks also apply to violations of § 43(a). Thus, . . . all statutory remedies available to the owner of a registered mark are now equally available to the plaintiff who uses s 43(a) as the vehicle to assert claims of infringement of unregistered marks, tradenames, or and trade dress . . . .

3 <u>McCarthy on Trademarks and Unfair Competition</u>, § 27.02[4] (3rd ed. 1994) (emphasis added); <u>see</u> <u>also</u> Callman on Unfair Competition, § 2.07 (4th ed. 1994). Thus, § 43(a) is not applicable to the

plaintiffs' claims which are based on the registered trademark, Closomat.

Accordingly, the court finds that the plaintiffs' second, third, and fifth claims should be dismissed.

C.

The plaintiffs have moved the court to extend the discovery deadline (to 120 days from the date of entry of the court's order ruling on the defendants' motion to dismiss and/or for summary judgment) and the deadline for amendments to the pleadings (to 60 days from the date of entry of the order). The plaintiffs contend that good cause exists for the extensions since the defendants have sought a stay of this cause pending disposition of their motion to dismiss. Indeed, by Order entered April 18, the court stayed this cause pending the disposition of their motion to dismiss.

Assuming that further discovery were necessary, the plaintiffs have not availed themselves of the relief provided by Fed. R. Civ. P. 56(f). Thus, the plaintiffs' request for an extension of the discovery deadline is insufficient to preclude the court's grant of summary judgment to the Geberit defendants. More importantly, further discovery would be unnecessary in light of the court's determination that the plaintiffs lack standing to bring this cause. Significantly, the only specific discovery that the plaintiffs seek is the deposition of <u>Salo</u> <u>Bano</u> representatives. Such discovery is not even remotely likely to lead to any admissible evidence regarding the plaintiffs' standing to bring this

18

cause. Additionally, without standing to bring this action, any amendments to the complaint would be fruitless. Similarly, the plaintiffs' motion for issuance of letters rogatory must be denied as moot.

Because the plaintiffs complaint must be dismissed for lack of standing and any amendment would be fruitless, the Geberit defendants' motion for extension of the discovery and amendment deadlines, contingent on the entry of an order that did not dispose of all the plaintiffs' claims, should be denied as moot.

Accordingly, the plaintiffs' motion to extend the discovery deadline and time to move to amend the pleadings, the plaintiffs' motion for letters rogatory, and the Geberit defendants' motion for extension of deadlines must be denied as moot.

D.

The plaintiffs have claimed that they are licensed under the mark, but only FIC has a license relating to the mark. The plaintiffs have claimed that each of them "has been duly authorized to commence this action." Response to Interrogatory No. 5. None of the plaintiffs were authorized to commence this action; moreover, the plaintiffs brought this action in violation of the terms of the License Agreement -- the very agreement upon which the plaintiffs' relied as the basis for their right to bring this action. The plaintiffs asserted false and baseless claims in their complaint. The plaintiffs knew that the claims were false and baseless. Moreover, it appears that the plaintiffs' willfully delayed in producing the License Agreement, which ultimately shows

19

that none of the plaintiffs has standing to bring or pursue this action.   The plaintiffs failed to produce the License Agreement until they were ordered to do so by the court.

In addition to authority under Rule 11 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 11(c), the court has inherent authority to sanction the plaintiffs and their counsel for their   reprehensible   actions   including   the   filing   of   false pleadings, the advocating of false and frivolous claims, and using such tactics as delay and, apparently, deception to maintain this action.   Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). Rule   11(c)(1)(B)   allows   a   district   court   to   impose   Rule   11 sanctions on its initiative, subject to the limitation in Rule 11(c)(2)(B), for breach of the certification set forth in Rule 11(b)(2), after giving the offending party or counsel an opportunity to show cause why sanctions should not be imposed.

It appears to the court that the plaintiffs' conduct in bringing this action, filing false pleadings, and advocating false and baseless positions, is inconsistent with the certification of Rule 11(b)(1), (2) and (3).   Accordingly, the court affords the plaintiffs and their counsel twenty-one (21) days from the date of this order within which to show cause why they should not be required to pay reasonable attorney fees and other expenses incurred by the Geberit defendants in defending this action.

20

### III.

For the foregoing reasons, the court:

(1)   GRANTS the Geberit defendants' motion to dismiss and/or for summary judgment (filed March 1, 1995), DISMISSING WITH PREJUDICE all of the plaintiffs claims against the Geberit defendants;

(2)   DENIES AS MOOT the plaintiffs' motion for issuance of letters rogatory (filed March 1, 1995 (#89));

(3)   DENIES AS MOOT the plaintiffs' motion to extend discovery deadline and time to move to amend pleadings (filed March 29, 1995 (#93));

(4)   DENIES AS MOOT the Geberit defendants' motion for order granting plaintiffs' motion for extensions of deadlines (filed April 20, 1995 (#104)); and

(5)   AFFORDS the plaintiffs and their counsel twenty-one (21) days from the date of this order within which to show cause why they should not be required to pay reasonable attorney fees and other expenses incurred by the Geberit defendants in defending this action.

SO ORDERED.

ENTERED: _July 10, 1995_____

                    s/Robert L. Miller, JR.
                  _____
                    Robert L. Miller, Jr., Judge
                    United States District Court

cc:  A. Goodman, M. Murray
     F. Eichhorn, Jr.; R. Potter; J. Lorber, R. Palmer, Sr.

21